## MISSOURI–KANSAS–TEXAS R. CO. OF TEXAS v. MARS et al. (No. 11682.) *

Court of Civil Appeals of Texas. Fort Worth.
Feb. 19, 1927.

Rehearing Denied March 19, 1927.

1. **Commerce ⬡27(1)—Interstate railroads are subject to congressional legislation, though also carrying intrastate commerce (Const. U. S. art. 1, § 8).**

Under the provisions of the commerce clause of Const. U. S. art. 1, § 8, railway companies may be regulated by Congress if they engage in interstate commerce, even though they may also carry on intrastate commerce.

2. **Railroads ⬡194(6)—Property purchased at sale of railroad held subject to judgment against railroad company for damages to shipment (Rev. St. 1925, art. 6422).**

Claim on judgment held against a railroad for damages for delay and rough usage in cattle shipment *held* within Rev. St. 1925, art. 6422, providing that, in case of a sale of the property and franchises of a railroad company to purchasers who form a corporation, such property should be charged with all subsisting liabilities of the sold-out company or its receiver.

3. **Railroads ⬡194(8)—Judgment creditor of railroad sold must allege and prove purchaser had permission from Interstate Commerce Commission to assume company's obligations (Rev. St. 1925, art. 6422; Interstate Commerce Act, § 20a, subds. 2, 11, added by Transportation Act 1920 [U. S. Comp. St. § 8592a]).**

In an action brought under Rev. St. 1925, art. 6422, against the purchasers of a railroad to recover the amount of a judgment for damages to a cattle shipment obtained against the sold-out railroad company, *held* that the plaintiff must allege and prove permission from the Interstate Commerce Commission, under the federal Interstate Commerce Act, § 20a, subds. 2, 11, added by Transportation Act 1920 (U. S. Comp. St. § 8592a), to assume the obligations or liabilities of the sold-out railroad company.

4. **Railroads ⬡194(6)—Purchasers of railroad may not assume statutory liability for judgment against company without Interstate Commerce Commission's order (Interstate Commerce Act, § 20a, subds. 2, 11, added by Transportation Act 1920 [U. S. Comp. St. § 8592a]; Rev. St. 1925, art. 6422).**

Rev. St. 1925, art. 6422, providing that the property and franchises of a railroad company sold to purchasers forming a corporation shall be subject to the payment of subsisting liabilities against the sold-out company, *held* limited by the Interstate Commerce Act, § 20a, subds. 2, 11, added by Transportation Act 1920 (U. S. Comp. St. § 8592a), forbidding the assumption of the liabilities of any other person by a carrier without an order of the Interstate Commerce Commission, so that the purchasers of a railroad were not liable for a judgment obtained against the carrier for damages to a cattle shipment without such order having been obtained.

5. **Railroads ⬡194(8)—It will not be presumed that purchasers of railroad obtained order from Interstate Commerce Commission permitting assumption of company's liability (Rev. St. 1925, art. 6422; Interstate Commerce Act, § 20a, subds. 2, 11, added by Transportation Act 1920 [U. S. Comp. St. § 8592a]).**

In an action brought against purchasers of a railroad, under Rev. St. 1925, art. 6422, providing that in case of the sale of the franchises and property of a railroad such property should be subject to the debts of the sold-out corporation, it will not be presumed that necessary order was obtained from the Interstate Commerce Commission, under Interstate Commerce Act, § 20a, subds. 2, 11, added by Transportation Act 1920 (U. S. Comp. St. § 8592a), permitting the purchasers to assume the liability of the sold-out corporation for a claim held against the railroad on a judgment.

6. **Railroads ⬡194(6)—Sufficiency of grounds for Interstate Commerce Commission's order permitting purchasers of railroad to assume company's liability held within exclusive jurisdiction of Commission.**

Whether there are sufficient grounds to authorize the Interstate Commerce Commission to grant an order permitting the purchasers of a railroad company to assume liability upon a judgment of the sold-out corporation *held* a mixed question of law and fact, the determination of which was within the exclusive jurisdiction of the Commission.

7. **Evidence ⬡54—A presumption of fact cannot rest upon a fact presumed.**

Facts upon which an inference may legitimately rest must be established by direct evidence as if they were facts in issue, and may not themselves be presumed.

Buck, J., dissenting in part.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Action by W. W. Mars and others against the Missouri-Kansas-Texas Railway Company of Texas. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

Thompson & Barwise, and Fred L. Wallace, all of Fort Worth, for appellant.

J. A. Templeton, of Fort Worth, for appellees.

BUCK, J. In 1913, W. W. Mars, C. B. Mars, Edgar Kerr, and John M. Grimland had some cattle at Skiatook, Okl., which was on the Midland Valley Railroad. They desired to ship them to Johnstone Switch. On October 18, 1913, they applied to L. B. Comer, alleged to be the assistant live stock agent of the Missouri, Kansas & Texas Railway Company of Texas, at Fort Worth, for 59 cattle cars. It was alleged that the Midland Valley Railway Company was a subsidiary of the Missouri, Kansas & Texas Railway Company of Texas, and was managed and controlled by the latter system. That said Comer promised the plaintiffs to have

at Skiatook, on October 24th and 25th, empty cattle cars in which to ship some 1,600 head of cattle owned by plaintiffs. That there was in force on said last-named dates a special rate for interstate shipments over the Midland Valley Railway Company and the Missouri, Kansas & Texas Railway Company and the Missouri, Kansas & Texas Railway Company of Texas and other railway companies necessary to be used in said shipment, and that the defendant knew that the plaintiffs desired to take advantage of this special rate for their shipment.

It was alleged that the railway companies had one-half of the empty cars necessary for the shipment at Skiatook on October 25th, but that they did not furnish the other cars necessary until October 31st. That relying on the promises of the aforesaid agent of the Missouri, Kansas & Texas Railway Company and the Missouri, Kansas & Texas Railway Company of Texas to have the cars at Skiatook on October 24th and 25th, plaintiffs had the cattle to be shipped at the station, and that a very cold spell of weather prevailed during the succeeding week, and the range was very poor, and no protection from the inclemency of the weather was provided, and the cattle suffered from the cold,- exposure, and lack of grass and many of them died and all were emaciated and depreciated in value. That on said October 31st, or November 1st, the remainder of the cattle were loaded on the cars and were shipped to Muskogee, Okl., where they were transferred to the Missouri, Kansas & Texas Railway Company and then shipped to its terminus, at or near Denison, Texas, and then shipped over the Missouri, Kansas & Texas Railway Company of· Texas to the point of its connection with the defendant Galveston, Harrisburg & San Antonio Railway Company, to be delivered by the said last-named carrier at their destination. That there were many negligent delays and much rough, usage in the shipment over the Missouri, Kansas & Texas Railway Company and the Missouri, Kansas & Texas Railway Company of Texas, and that by reason of the delays on said roads, and the delay in furnishing the cars at Skiatook, the time for taking advantage of the special rate authorized· and offered expired and the plaintiffs were required to pay the extra freight rate of $905.85, and by reason of the delays and rough usage while on said Missouri, Kansas & Texas Railway Company and the Missouri, Kansas & Texas Railway Company of .Texas the cattle were negligently injured and depreciated in value to the amount of $3,755. Plaintiffs prayed for other damages, such as extra feed, extra care, etc.

Plaintiffs filed suit in the Sixty-Eighth district court of Dallas county and recovered an agreed judgment in the sum of $2,900, with interest and costs of suit, against the Missouri, Kansas & Texas Railway Company and the Missouri, Kansas & Texas Railway Company of Texas, jointly and severally. Plaintiffs Edgar Kerr and John M. Grimland transferred their interest in the judgment to plaintiff W. W. Mars.

On September 27, 1915, the United States District Court for the Northern District of Texas, sitting at Dallas, appointed C. E. Schaff receiver for the Missouri, Kansas & Texas Railway Company of Texas. A receiver was likewise appointed for. the Missouri, Kansas & Texas Railway Company at Springfield, Mo. The claim of plaintiffs below was submitted to the United States District Court at Dallas, the master found that Louis Wilson, the attorney of plaintiffs in the state court, owned an undivided one-fourth interest in said judgment, and that he had accepted a settlement of his claim. That W. W. Mars and C. B. Mars were the owners of the remaining three-fourths interest and that the same had not been paid or satisfied. On February 13, 1922, the United States District Court affirmed the sale of the franchise and properties of the Missouri, Kansas & Texas Railway Company of Texas to Francis F. Randolph and Hugo W. Blumenthal and to the Missouri-Kansas-Texas Railroad Company, which railroad had been chartered by its promoters for the purpose of taking over the franchise and properties of the Missouri, Kansas & Texas Railway Company of Texas. This order of confirmation of sale provided that the purchasers should hold the property "free from any charge or claim in respect of the indebtedness of the receiver other than that which the purchaser of said property is by the provisions of the confirmatory decree expressly required to assume."

It was expressly provided in the order that nothing contained therein should be deemed to affect any suit or proceeding brought pursuant to article 6625 of the Revised Statutes of the state of Texas, now article 6422, Revised Statutes of 1925, which, in part, reads as follows:

"In case of a sale of the property and franchises of a railroad company within this state the purchaser or purchasers thereof and associates, if any, may form a corporation under the first chapter of this title, for the purpose of acquiring, owning, maintaining and operating the road so purchased, as if such road were the road intended to be constructed by the corporation; and, when such charter has been filed, the new corporation shall have the powers and privileges then conferred by the laws of this state upon chartered railroads, including the power· to construct and 'extend. The property and franchises so purchased shall be charged with. and subject to ·the payment of all subsisting liabilities and claims for death and personal injuries sustained in the operation of the railroad by the sold-out company and by any receiver thereof and for loss of and damage to the property sustained in the operation of the railroad

by the sold-out company and by any receiver thereof and for the current expenses of such operation including labor, supplies and repairs, provided that all such subsisting claims and liabilities shall have accrued within two years prior to the beginning of the receivership resulting in the sale of such property and franchises. or within two years prior to the sale, if said property and franchises be sold otherwise than under receivership proceedings, unless suit was pending on such claims and liabilities when the receiver was appointed, or when the sale was made: in which event claims and liabilities on which suits were so pending shall be protected hereby as though accruing within two years; and provided, that by such purchase and organization no right shall be acquired in conflict with the present Constitution and laws, in any respect, nor shall the main track of any railroad once constructed and operated be abandoned or moved."

On September 24, 1923, plaintiffs W. W. Mars and C. B. Mars filed suit against the Missouri-Kansas-Texas Railroad Company of Texas, in which they set up the facts heretofore briefly related, and alleged that the defendant had taken over the franchise and the properties of the Missouri, Kansas & Texas Railway Company of Texas, against which the joint and several judgment had been obtained, and that by virtue of the article of the statutes heretofore set out, and by virtue of having accepted a charter from the state of Texas, the defendants became liable for the judgment heretofore obtained against the sold-out railroad company. It was further alleged that the franchises and properties of the Missouri, Kansas & Texas Railway Company had theretofore been sold by order of the United States District Court at Springfield, Missouri, and that such sale had been made free from all liens, charges, and claims, and that plaintiffs' judgment against said railroad company had been lost. Plaintiff sought a judgment against the new corporation, on the judgment theretofore obtained with interest, and on trial they recovered a judgment in the sum of $2,175, with 6 per cent. interest thereon from May 24, 1917, to the date of the judgment, to wit, February 3, 1926, said judgment amounting to $3,309.63, with costs of suit. From this judgment the defendant has appealed.

### Opinion.

Appellant urges that by the terms of the Transportation Act of 1920, enacted by the federal Congress and effective March 1, 1920, the defendant was denied the right to assume obligations or liabilities "unless and until, and then only to the extent that, upon application by the carrier, and after investigation by the Commission of the purposes and uses of the proposed issue and the proceeds thereof, or of the proposed assumption of obligation or liability in respect of the securities of any other person, natural or artificial, the Commission by order authorizes

such issue of assumption." See section 20a, subd. 2, and section 20a, subd. 11, of Interstate Commerce Act, as added by the Transportation Act (U. S. Comp. St. § 8592a).

[1] It was agreed by counsel representing all parties that the Missouri-Kansas-Texas Railroad Company of Texas was organized for the purpose of carrying on interstate as well as intrastate commerce, and that it has been so engaged. Appellants urge that it was necessary in order for plaintiff to show a cause of action against the defendant to allege and prove that the Interstate Commerce Commission had granted the order authorizing the assumption by the new corporation of any of the debts or liabilities of the sold-out corporation. It is contended that, under the provisions of what is commonly called the commerce clause of the federal Constitution, being article 1, section 8, that railway companies may be regulated by Congress, if such railroads engage in interstate commerce, even though they may also carry on intrastate commerce. We think this proposition is well established. See Hannibal & St. J. Railroad Co. v. Husen, 95 U. S. 465, 24 L. Ed. 527; Northern Securities Co. v. United States, 193 U. S. 333, 24 S. Ct. 436, 48 L. Ed. 679; Houston, E. & W. T. Ry. Co. v. United States, 234 U. S. 342, 34 S. Ct. 833, 58 L. Ed. 1341.

Appellant urges that, since it could not legally assume the liabilities of the sold-out corporation until and unless the Interstate Commerce Commission had granted it leave so to do, the fact of such grant was a condition precedent which the plaintiff must allege and prove in order to show a cause of action, and that this is true even though there exists a statutory provision in the state granting the charter to the new corporation that such corporation shall be liable for certain claims, debts, and obligations of the sold-out corporation. It is urged that the Transportation Act of 1920 changed the rule in the various states theretofore existing, under which such states had the power to make rules and regulations with reference to the finances of a carrier which was organized under their laws, and that Congress under said act assumed the power to determine what sort of obligations, if any, should be assumed by the railroads engaged in interstate traffic; that the purpose of this act was not to protect the railroads which were engaged in the carriage of interstate commerce, but to protect interstate commerce from burdens which might be placed upon it by the laws of the various states. See State of Colorado v. United States, 271 U. S. 153, 46 S. Ct. 452, 454, 70 L. Ed. 878, by Justice Brandeis of the Supreme Court of the United States; Railroad Commission v. So. Pac. Co., 264 U. S. 331, 44 S. Ct. 376, 68 L. Ed. 713, by Chief Justice Taft; McDermott v. Wisconsin, 228 U. S. 115, 33 S. Ct. 431, 57 L. Ed. 754, 47 L. R. A. (N. S.) 984, Ann.

Cas. 1915A, 39; Atlantic Coast Line v. Wharton, 207 U. S. 328, 334, 28 S. Ct. 121, 52 L. Ed. 230. It is urged that article 6422 of the 1925 Civil Statutes, above referred to, is invalid and cannot be enforced against a carrier of interstate commerce, at least without allegation and proof of the fact that authority to assume such obligation has been given by the Interstate Commerce Commission.

[2-4] We are all of the opinion that the claim herein involved is of a character coming within the terms of article 6422, supra. There is a difference of opinion among us as to whether or not it was necessary for the plaintiffs below to allege in their petition that permission had been secured from the Interstate Commerce Commission to assume this indebtedness or obligation, and proof be made that such order had been granted, before plaintiffs would have shown a right to recovery. The majority are of the opinion that the allegation should have been made and proof offered of the grant or order by the Interstate Commerce Commission, and the following are the conclusions reached by them.

In Maxwell Land Grant Co. v. Dawson, 151 U. S. 586, 14 S. Ct. 458, 38 L. Ed. 279, the following was said:

"An exception in a grant is said to withdraw from its operation some part or parcel of the thing granted, which, but for the exception, would have passed to the grantee under the general description. The effect in such cases in respect to the thing excepted is as though it had never been included in the deed. If, for example, a person should convey to another a block of land, excepting therefrom a certain lot previously conveyed, to sustain ejectment for any particular lot, it would be necessary for the plaintiff to show that it was not the lot which had been previously conveyed. There is a general rule, applicable both to conveyances and statutes, that where there is an exception in the general granting or enacting clause, the party relying upon such general clause must in pleading state the general clause, together with the exception, and must also show by the testimony that he is not within the exception."

And in the opinion in that case several other decisions of the same court are cited, announcing the same doctrine. In Colorado Coal & Iron Co. v. United States, 123 U. S. 307, 8 S. Ct. 131, 31 L. Ed. 182, the court quotes with approval the following from 1 Greenleaf on Evidence, § 78:

"To this general rule, that the burden of proof is on the party holding the affirmative, there are some exceptions, in which the proposition, though negative in its terms, must be proved by the party who states it. One class of these exceptions will be found to include those cases in which the plaintiff grounds his right of action upon a negative allegation, and where, of course, this negative is an essential element in his case."

In 16 Cyc. 936, many decisions are cited to support this announcement in the text:

"The party whose contention requires proof of a negative fact had the burden of evidence to prove that fact."

And this is said on page 927 of the same volume:

"What allegations are necessary to constitute a sufficient case is a question of substantive law, but whenever, under the rules of substantive law applicable to the rights or liabilities in dispute between the parties, an affirmative case requires proof of a material negative allegation, the party, whether plaintiff or defendant, has the burden of proving it, so far as is reasonably possible, even as to facts within the knowledge or control of the other side."

In Reed v. L. & N. R. R. Co., 104 Ky. 603, 47 S. W. 591, 48 S. W. 416, by the Court of Appeals of Kentucky, reported in 44 L. R. A. 823, the following is said:

"The rule that a plaintiff is not required to allege matters which are peculiarly within the knowledge of a defendant has no application 'where the matter is such that its affirmation is essential to the apparent or prima facie right of recovery of the party pleading. There it ought to be affirmed or denied by him in the first instance, though it may be such as would otherwise properly form the subject of objection on the other side.' See Steph. Pl. 252."

It is to be noted that the rule announced in the authorities cited above has reference to statutes and contracts, which prima facie give the right asserted, unless the same is denied by the terms of the expressed exception. Those authorities apply with added force in the case at bar, since the provisions of the act of Congress expressly prohibited the assumption and payment of plaintiff's judgment unless permission to do so should be granted by the Interstate Commerce Commission. In view of that act, in order to show a prima facie case of defendant's liability for the judgment, it was incumbent upon plaintiff to plead and prove the defendant had procured an order of the Interstate Commerce Commission permitting it so to do. In other words, the assumption of the judgment is expressly forbidden by the main provisions of the act, and plaintiff's right of action, if any, arose solely under the stated exception; and it seems to us too plain for argument that his pleadings should allege the granting of such an order by the Commission, in order to establish liability of defendant for the judgment.

The case of Blum v. Looney, 69 Tex. 1, 4 S. W. 857, involved the right of plaintiff to land under and by virtue of a statute, and the syllabus of that decision contains the following:

"When one claims a benefit under a statute he should bring himself, in a suit that involves his right, by allegation and evidence, strictly within the terms and conditions of the law by virtue of

which the benefit is claimed. When the proviso to a confirming act of the Legislature restricts its benefits to designated persons who on account of meritorious service are to receive such benefits as a bounty, the fact that a claimant of such bounty belongs to the designated class, is in the nature of a condition precedent and must be shown, before he can recover."

To the same effect is Nowlin v. Hall (Tex. Civ. App.) 66 S. W. 851.

[5] The majority have concluded, further, that there is no merit in the contention of appellee to the effect that the presumption must be indulged that defendant applied for and procured from the Commission permission to assume payment of the judgment.

[6] In the first place, the reasoning advanced to support that contention is illogical, since the conclusion sought to be established, to wit, defendant's obligation to pay the judgment, is taken as a premise, and from that as the major premise, and the further premise of assumption of right conduct on the part of defendant, the conclusion is reached that defendant did, in fact, procure permission of the Commission to pay the judgment. The only method by which defendant could become bound to pay the judgment would be to apply an order from the Commission granting permission so to do. If it did so then, ipso facto, its liability was established with no need of presumption or further argument. And, in this connection, it is to be remembered that without such an order the act of Congress noted made it unlawful for defendant to pay the judgment. Furthermore, whether or not there were sufficient grounds to authorize the Commission to grant the order was a mixed question of law and fact, the determination of which was within the exclusive jurisdiction of the Commission.

In the second place, the authorities relied on by appellee to support the presumption invoked, in our opinion, have no proper application here, for the following reasons: The charter issued by the state to the defendant did not specify plaintiff's judgment as one of the debts it assumed to pay, nor was there any allegation or proof that at the time the charter was applied for defendant had knowledge of this judgment which had not been rendered against it, but against the sold-out corporation, and that the charter was issued upon its agreement to assume its payment. Under such circumstances, to establish liability of defendant for payment of the judgment by indulging presumptions, it would be necessary to pyramid some three or four presumptions, one upon another, as follows: First, the presumption that appellant had knowledge of appellee's unpaid judgment; second, the presumption that defendant then applied to the Commission for permission to pay the judgment. The third presumption would be that defendant then presented to the Commission a showing of such facts as made it the duty of the Commission to grant the order prayed for, which is a mixed question of law and fact. The fourth presumption based on the three foregoing would be that the Commission performed its duty and made the order.

[7] It is hardly necessary to cite authorities to show that "a presumption of fact cannot rest upon a fact presumed. The fact relied upon to support the presumption must be proved. No inference of fact should be drawn from premises which are uncertain. Facts upon which an inference may legitimately rest must be established by direct evidence as if they were the facts in issue; * * * 16 Cyc. 1051; Missouri Pac. Ry. Co. v. Porter, 73 Tex. 307, 11 S. W. 324." Fort Worth Belt Ry. Co. v. Jones, 106 Tex. 345, 166 S. W. 1130.

Moreover, the act of Congress does not supersede the state statute in its entirety, but it does have the effect to limit its application to debts of the sold-out corporation which the Interstate Commerce Commission has ordered the purchasing company to pay. Therefore, the state statute should be construed as imposing upon the new corporation, by virtue of taking out its charter, the obligation to pay only such debts of the old corporation as the Commission has ordered paid, and the act of Congress expressly forbids it to pay any other of such debts. It follows, therefore, that there is in fact no exception to the state statute or the act of Congress to be considered nor presumption to be indulged in relation thereto, in the determination of the merits of appellant's general demurrer to appellees' petition.

The majority conclude that the general demurrer of the defendant below raised this defect in the plaintiff's petition, and that said general demurrer is good and the trial court should have sustained the same. Therefore the judgment below is reversed and the cause is remanded.

BUCK, J. (dissenting). Appellees do not question the paramount authority of Congress to pass laws controlling interstate commerce or carriers engaged in interstate commerce, nor do they question the authority of Congress to enact the Transportation Act of 1920 (41 Stat. 456), and especially the provisions herein involved. But they do allege that this is a defensive matter, and, in the absence of any showing to the contrary, that the law presumes that the defendant corporation and its promoters complied with the law, and especially with the Transportation Act, and in applying for and accepting a charter, and in operating the railroad thereunder, it or they impliedly represented to the state that it or they had complied with the requirements of said act. It is presumed that they who apply for the charter, as well as the secretary of state, who was the instrumentality of the government of

the state of Texas in issuing the charter, knew the law, and knew that before a charter could be legally issued to the new corporation, and in order to comply with the present article 6422, Rev. Statutes of 1925, permission must be secured by the promoters from the Interstate Commerce Commission to assume the debts of the sold-out corporation specified in this article.

In Weaver v. Palmer Bros. Co., 270 U. S. 402, 46 S. Ct. 320, 70 L. Ed. 654, there was involved the question as to whether the provisions of a statute of the state of Pennsylvania, which prohibited the use of "shoddy," meaning any material which has been spun into yarn, knit or woven into fabric, and subsequently cut up, torn up, broken up, or ground up into comfortables, violates the due process clause, or the equal protection clause, of the Fourteenth Amendment of the Constitution of the United States. The Supreme Court said:

"Invalidity may be shown by things which will be judicially noticed, * * * or by facts established by evidence. The burden is on the attacking party to establish the invalidating facts" (citing Minnesota Rate Cases, 230 U. S. 352, 33 S. Ct. 729, 57 L. Ed. 1511, 1563, 48 L. R. A. [N. S.] 1151, Ann. Cas. 1916A, 18). "Laws frequently are enforced which the court recognizes as possibly or probably invalid, if attacked by a different interest or in a different way."

In American Railway Express Co. v. Lindenburg, 260 U. S. 584, 43 S. Ct. 206, 67 L. Ed. 414, 418, the question at issue was whether or not the Interstate Commerce Commission had ever authorized the express company to establish and maintain rates dependent upon declared or agreed values. If yea, the limitation of value stated in the receipt given by the company for baggage carried and lost was valid. Otherwise, such limitation was invalid under the provisions of the Second Cummins Amendment (U. S. Comp. St. § 8563 et seq.). No proof was made that the rate charged by the carrier and paid by the shipper had been authorized by the Interstate Commerce Commission. The Second Cummins Amendment is, in part, as follows:

"Provided, however, that the provisions hereof respecting liability for full actual loss, damage, or injury, notwithstanding any limitation of liability or recovery or representation or agreement or release as to value, and declaring any such limitation to be unlawful and void, shall not apply, first to baggage carried on passenger trains or boats, or trains or boats carrying passengers; second, to property, except ordinary live stock, received for transportation concerning which the carrier shall have been or shall hereafter be expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property, in which case such declaration or agreement shall have no effect than to limit liability and recovery to an amount not exceeding the value so declared or released, and shall not, so far as relates to values, be held to be a violation of section ten of this act to regulate commerce, as amended," etc. U. S. Comp. St. § 8604a.

The principal question of law which was determined in this case, in so far as it is pertinent to the case at bar, was whether or not Lindenburg, the shipper, was bound by the terms of that part of the shipping contract or receipt which was issued by the company to him, and which stipulated that:

"In no event 'shall this company be held liable or responsible, nor shall any demand be made upon it beyond the sum of $50 upon any shipment of 100 pounds or less, and for not exceeding 50 cents per pound upon any shipment weighing more than 100 pounds and the liability of the express company is limited to the value above stated unless the just and true value is declared at time of shipment, and the declared value in excess of the value above specified is paid for, or agreed to be paid for under this company's schedule of charges for excess value."

The carrier affirmed and the shipper denied the validity and binding effect of the stipulation in question. It was proved by the carrier that a similar contract between the carrier and other shippers had been approved by an order of the Commission in accordance with the Second Cummins Amendment, which authorized the commissioner to approve such stipulation in such cases, but no such approval was shown in the particular case. In the absence of such approval by the Commission, such a stipulation would be void under the Carmack Amendment as amended by the First Cummins Amendment (U. S. Comp. St. §§ 8592, 8604a). The carrier as a defense to the action pleaded the provisions of the contract or receipt issued to the shipper exempting it from any liability in excess of the agreed or stipulated valuation. The plaintiff denied the validity of that defense because it had not been shown that the Commission had authorized the carrier to insert such a stipulation in its contract, and, hence, that the stipulation was invalid under the Carmack Amendment. On the issue thus raised, the question arose as to which party had the burden of proof, viz., the defendant to show that the Commission had granted such authority, or the plaintiff to show that such authority had not been granted.

In answering the question thus presented for decision, the Supreme Court said:

"A copy of the tariff, certified by the secretary of the Commission, was put in evidence. If these facts do not warrant the logical inference of a grant of authority they do afford the basis for a legal presumption to that effect, for, if petitioner was not duly authorized by the Commission, its action in attempting to limit its liability was unlawful, and, as this court said in Cincinnati, N. O. & T. P. Ry. Co. v. Rankin,

241 U. S. 319, 327, 36 S. Ct. 555, 558 (60 L. Ed. 1022 [1026] L. R. A. 1917A, 265):

"'It cannot be assumed, merely because the contrary has not been established by proof, that an interstate carrier is conducting its affairs in violation of law. Such a carrier must comply with strict requirements of the federal statutes or become subject to heavy penalties, and in respect of transactions in the ordinary course of business it is entitled to the presumption of right conduct.'

"It is a rule of very general application, that where an act is done which can be done legally only after the performance of some prior act, proof of the latter carries with it a presumption of the due performance of the prior act." Knox County v. Ninth National Bank, 147 U. S. 91, 97, 13 S. Ct. 267, 270, 37 L. Ed. 93, 95.

See, also, New York C. & H. R. R. Co. v. Beaham, 242 U. S. 148, 151, 37 S. Ct. 43, 61 L. Ed. 210, 216; Young v. South Tredegar Iron Co., 85 Tenn. 189, 2 S. W. 202, 4 Am. St. Rep. 752; Scottish Commercial Ins. Co. v. Plummer, 70 Me. 540, 544.

In the absence of proof to the contrary, we therefore indulge the presumption that, in basing its transportation charges upon the value recited in the receipt, the petitioner had due authority.

In the case cited (241 U. S. 327, 36 S. Ct. 558, 60 L. Ed. 1022, L. R. A. 1917A, 265), the Supreme Court further said:

"It cannot be assumed, merely because the contrary has not been established by proof, that an interstate carrier is conducting its affairs in violation of law. Such a carrier must comply with strict requirements of the federal statutes or become subject to heavy penalties, and in respect of transactions in the ordinary course of business it is entitled to the presumption of right conduct. The law 'presumes that every man, in his private and official character, does his duty until the contrary is proved; it will presume that all things are rightly done, unless the circumstances of the case overturn this presumption, according to the maxim, Omnia presumuntur rite et solemnitur esse acta, donec probetur contratium.'"

In Bank of United States v. Dandridge, 12 Wheat. (25 U. S.) 64, 70, 6 L. Ed. 552–554, the court said:

"If officers of the corporation openly exercise a power which presupposes a delegated authority for the purpose, and other corporate acts show that the corporation must have contemplated the legal existence of such authority, the acts of such officers will be deemed rightful, and the delegated authority will be presumed.

* * * In short, we think that the acts of artificial persons afford the same presumptions as the acts of natural persons. Each affords presumptions, from acts done, of what must have preceded them, as matters of right, or matters of duty."

Where the illegality of a contract is not apparent upon its face, the burden of proof is on the party asserting it, the presumption being in favor of legality. 13 Corpus Juris, 761; Cundiff v. Campbell, 40 Tex. 142; Tucker v. Streetman, 38 Tex. 71; Olcott v. Gabert, 86 Tex. 122, 23 S. W. 985; San Antonio Street Ry. Co. v. Adams, 87 Tex. 131, 26 S. W. 1040; Foard County v. Sandifer, 105 Tex. 420, 151 S. W. 523.

In St. L., S. F. & T. Ry. Co. v. Birge-Forbes Co. (Tex. Civ. App.) 139 S. W. 3, writ of error denied, the court said:

"Again, the appellee's petition disclosed a legal contract, and the burden of establishing that it was illegal was upon the appellants. This would require appropriate pleadings and proof of the facts showing such illegality."

See Lancaster v. Wheeler, 266 S. W. 795, 796, by the Texarkana Court of Civil Appeals; C. R. I. & G. Ry. Co. v. Shroyer (Tex. Civ. App.) 197 S. W. 773, holding that an interstate carrier is entitled to the presumption that it is conducting its business lawfully; New York, etc., Ry. Co. v. Beaham, 242 U. S. 148, 37 S. Ct. 43, 61 L. Ed. 210, 216; Humble Oil & Refining Co. v. Strauss (Tex. Civ. App.) 243 S. W. 528.

The writer is of the opinion that, in the absence of pleading and proof to the contrary, it should be presumed that the promoters and officers of the new corporation, when they applied to the state of Texas for a charter, represented to the secretary of state that the order had been obtained from the Interstate Commerce Commission authorizing the new corporation to assume the indebtedness of the sold-out corporation designated in article 6422. I do not think that the failure of plaintiffs' petition to show that such permission was secured renders it subject to a general demurrer.

By reason of other pressing official duties, the writer is precluded from a further discussion of the interesting question herein involved. He realizes the cogent force of the views of the majority, but does not believe that the petition of the plaintiffs below was subject to a general demurrer.