DOROTHEA T. FRANK, Plaintiff, *v.* NEW YORK, CHICAGO & ST. LOUIS RAILROAD COMPANY, Defendant.*

Municipal Court of New York, Borough of Manhattan, Ninth District, March 15, 1940.

* Affd., Supreme Court, Appellate Term, First Department, June 28, 1940, N. Y. L. J. June 29, 1940, p. 2932.

*House, Grossman, Vorhaus & Hemley,* for the plaintiff.

*Donovan, Leisure, Newton & Lumbard,* for the defendant.

WHALEN, J.   Plaintiff moves for summary judgment in an action upon interest coupons attached to bonds issued by the Northern Ohio Railway Company under date of October 1, 1895, bearing the guaranty of punctual payment indorsed thereon by The Lake Erie & Western Railroad Company.   There are five causes of action based upon five separate coupons, maturing April 1, 1939, in the sum of twenty-five dollars each, and unpaid.   The defendant is a consolidated corporation organized April 11, 1923, pursuant to the statutes of New York, Pennsylvania, Ohio, Indiana and Illinois, and is being sued as a New York corporation.   The Lake Erie & Western Railroad Company was an Illinois corporation and was one of the constituents of the consolidated corporation.

Section 143 of the Railroad Law of the State of New York, pursuant to which the consolidation was effected, provides that the debts and liabilities of the several consolidating corporations shall attach to and become liabilities of the consolidated corporation. Hence this suit against this defendant.

Defendant interposes two defenses:

(1)  That the guaranty given by The Lake Erie & Western was *ultra vires* and wholly void.

(2)  That the defendant, an interstate carrier, was never authorized by the Interstate Commerce Commission to assume the guaranty as required by section 20a of the Interstate Commerce Act (U. S. Code, tit. 49, § 20a), and that without that authorization there can be no liability inasmuch as any such assumption of liability is illegal and void.

In its brief defendant does not question the sufficiency of the affidavits presented on plaintiff's affirmative case.

In support of its defense of *ultra vires* defendant presents voluminous affidavits and exhibits from the records of the corporations directly involved which, it is claimed, raise at least an issue of fact as to the power of The Lake Erie & Western to guarantee payment of the bonds and coupons of the Northern Ohio, and consequently require a denial of the motion.

Briefly summarized, defendant presents the following facts respecting the history and relationships of defendant, The Lake Erie & Western and the Northern Ohio:

The Lake Erie & Western was an Illinois corporation organized February 10, 1887.

The Pittsburgh, Akron & Western Railway Company was an Ohio corporation operating a line of railway in the State of Ohio. In 1894, having defaulted in payment of interest on its first mortgage bonds, a proceeding was brought to foreclose the mortgage and a decree of foreclosure was entered May 23, 1894.

On October 8, 1894, at a directors' meeting of The Lake Erie & Western, the president, Calvin S. Brice, was authorized to acquire the railway if he could do so within certain limited terms. He thereafter conducted negotiations through a corporation controlled by him, called the Central Contract & Finance Co., with a committee representing the bondholders on the defaulted bonds of the P. A. & W. leading to an agreement whereby The Lake Erie & Western, instead of purchasing the railway outright, arranged to organize a new corporation to which title would pass and then have The Lake Erie & Western lease the line of railway perpetually and pay as rental the net proceeds of the line to the lessor and also to guarantee payment of principal and interest of bonds to be issued by the new corporation. This was later done except that the line was leased for 999 years instead of perpetually. A new corporation, the Northern Ohio Railway Co., was organized under the laws of the State of Illinois. The Northern Ohio issued bonds in the amount of $2,500,000, secured by a first mortgage on its line and The Lake Erie & Western arranged with a syndicate of bankers, headed by Vermilye & Co., to sell the bonds with the guaranty of The Lake Erie & Western indorsed thereon. From the records it appears that this guaranty was a very important, if not the principal, consideration for the purchase of the bonds.

A lease was given by the Northern Ohio to The Lake Erie & Western of all its properties for 999 years. All these proceedings were approved and thereafter ratified by the boards of directors and stockholders of both corporations, the active agent at all

times being Calvin S. Brice, the president of The Lake Erie & Western.

While all these various steps took time and were accomplished on various dates, the effective date of the whole operation, including the bonds, mortgage and lease, was October 1, 1895. Thereafter, until 1919, the line of railway owned by the Northern Ohio was operated under the lease by The Lake Erie & Western.

As to the defense of *ultra vires*, defendant cites the general principle, to the effect that a corporation, unless authorized by its charter or the statutes of the State of its organization, is without authority to guarantee the bonds or debts of any other corporation. This rule is expressed in the following excerpt from *Louisville (etc.) Ry. Co.* v. *Louisville Trust Co.* (174 U. S. 552 [1898]): " A railroad corporation, unless authorized by its act of incorporation or by other statutes to do so, has no power to guarantee the bonds of another corporation; and such a guaranty, or any contract to give one, if not authorized by statute, is beyond the scope of the powers of the corporation, and strictly *ultra vires*, unlawful and void, and incapable of being made good by ratification or estoppel."

However, there are exceptions to this general rule and in the opinion in the same case (at p. 573) appears the following: " One who takes from a railroad or business corporation in good faith, and without actual notice of any inherent defect, a negotiable obligation issued by order of the board of directors, signed by the president and secretary in the name and under the seal of the corporation, and disclosing upon its face no want of authority, has the right to assume its validity, if the corporation could, by any action of its officers or stockholders, or of both, have authorized the execution and issue of the obligation."

These bonds and their interest coupons, payable to bearer, are negotiable instruments. (*Evertson* v. *National Bank of Newport*, 66 N. Y. 15.)

There is no reason shown here to doubt that plaintiff is a *bona fide* purchaser for value without notice of any defect in these bonds or coupons.

The Lake Erie & Western was an Illinois corporation organized in 1887. It was not expressly authorized either in its articles of incorporation or by any general statute of Illinois to guarantee the obligations of any other person, natural or artificial. The power, if it had any, to make the guaranty must be found in the implied powers of the corporation. A corporation has implied powers to do all things necessary or incidental to the exercise of the powers expressly granted. (*Calumet, etc., Dock Co.* v. *Conkling*, 273 Ill. 318–322; 112 N. E. 982.)

Under the statutes of Illinois (Act of Feb. 12, 1855; Laws of 1855, p. 304) a railroad corporation of that State had power to enter into leases with other railroad corporations. (*Pennsylvania R. R. Co.* v. *St. Louis, Alton & Terre Haute Railroad Company*, 118 U. S. 290 [1885].)

It has been held that if a railroad corporation has power to take a lease of the lines of another corporation it has power to make agreements appropriate to such a transaction, such as payment of rent and guaranteeing payment of bonds of the lessor. (6 Fletcher Cyc. Corp. § 2719, p. 574; *Eastern Townships Bank* v. *St. Johnsbury & L. C. R. Co.*, 40 Fed. 423; writ of error dismissed, 149 U. S. 772.)

When a railroad corporation has possession of bonds of another railroad corporation it has power to indorse its guaranty thereon for the purpose of sale. (*Railroad Co.* v. *Howard*, 7 Wall. 392 [1868]; *Arnot* v. *Erie Railway Co.*, 67 N. Y. 315 [1876].)

When the guarantor is in reality the principal and the ostensible obligor on the bonds is in reality the creature of the guarantor the guaranty will be valid. (*Lake St. El. R. R. Co.* v. *Carmichael*, 184 Ill. 348 [1900]; 56 N. E. 372.)

It seems to me that this case comes within all of these exceptions to the general rule.

The guaranty was not executed for the accommodation of the Northern Ohio, but the entire transaction was a device engineered by The Lake Erie & Western for its own accommodation, in order to enable it to acquire control of the line of the old P. A. & W. so as to extend The Lake Erie & Western lines eastward.

Calvin S. Brice gave the instructions to a firm of attorneys for the organization of the Northern Ohio, for the preparation of the bond and mortgage and for the preparation of the lease. The Lake Erie & Western was the principal in the same way as the railroad was the principal in the *Carmichael* case.

Defendant claims The Lake Erie & Western never had actual possession of the bonds but they constructively passed through the hands of its secretary when he authorized delivery to Vermilye & Co., and in any event the question is not what was actually done but what The Lake Erie & Western had power to do so far as an innocent purchaser for value is concerned. (*Louisville (etc.) Ry. Co.* v. *Louisville Trust Co.*, supra.)

The information about this was not a matter of public record and defendant would be estopped from setting up any mere irregularity as against this plaintiff. (Id. p. 575.)

The Lake Erie & Western had express power under the Illinois statute to enter into a lease arrangement with another railroad

and it had implied power to make such terms as were necessary to carry out the lease.

In the case of *Eastern Townships Bank* v. *St. Johnsbury & L. C. R. Co. (supra)* it was held that a lessee railroad corporation had power to guarantee payment of the bonds of its lessor, in view of a State statute authorizing one railroad corporation to lease the lines of another. The Vermont statute (R. L. Vt. 1880, § 3303) is similar to the Illinois statute (Laws of 1855, p. 304, R. S. 1874, p. 807).

The cases of *ultra vires* cited by defendant are all cases where the transactions were held to be *ultra vires* because they were not made in furtherance of the purposes for which the corporations were organized, or because they were made in direct violation of a statute, such as the statutes of Illinois relating to the acquisition of land by a corporation. No Illinois statute has been cited prohibiting a railroad corporation from guaranteeing bonds in any case and under any circumstances. Defendant has cited no case which pushes the doctrine of *ultra vires* to the extent urged in this case.

In support of its second defense, defendant cites section 20a of the Interstate Commerce Act (U. S. Code, tit. 49, § 20a), and submits affidavits showing that no application was ever made to or authorization ever granted by the Interstate Commerce Commission to the assumption by defendant of liability on the guaranty in question.

Defendant urges this as a conclusive bar to the action and because the facts are not disputed makes a cross-motion for summary judgment in its favor.

Section 143 of the Railroad Law of the State of New York provides that in case of consolidation " all debts and liabilities incurred by either of such corporations shall thenceforth attach to such new corporation."

Section 20a of the Interstate Commerce Act (U. S. Code, tit. 49, § 20a), as amended by the Transportation Act of 1920, provides that it shall be unlawful for any carrier to issue or assume any liability in respect of the securities of any other person, natural or artificial, unless the Interstate Commerce Commission authorizes such assumption.

Defendant claims that section 20a (U. S. Code, tit. 49, § 20a) supersedes section 143 of the New York Railroad Law and inasmuch as no authorization has been obtained, the consequence is defendant has assumed no liability as guarantor of the Northern Ohio bonds.

Again defendant cites no cases directly in point. It claims that *Missouri-Kansas Texas R. Co. of Texas* v. *Mars* ([Tex. Civ. App.

1927] 294 S. W. 941) is in point but that case was reversed by the Texas Commission of Appeals (298 S. W. 271 [1927]), and the reversal was affirmed by the United States Supreme Court (278 U. S. 258) on the ground that securities were not involved in the case.

It seems to me that the dispute here revolves around the meaning to be given to the word " assume " as used in section 20a of the Interstate Commerce Act (U. S. Code, tit. 49, § 20a). If that means something different from the liability imposed by section 143 of the Railroad Law of the State of New York, the two statutes may be reconciled and there is no conflict between them. If they do have the same meaning then undoubtedly the Interstate Commerce Act controls because it is the supreme law of the land.

The word " assume " connotes a voluntary action and is directly applicable to leases where a lessee railroad attempts to assume liability on the debt of its lessor. This happened in *New York Central Securities Corp.* v. *United States* (54 F. [2d] 122 [S. D. N. Y. 1931]; affd., 287 U. S. 12 [1932]).

Words & Phrases (Fifth Series, vol. 1, p. 592; Permanent edition, vol. 4, p. 594) defines the word " assume " as " to take upon oneself."

The word " assume " does not appear in section 143 of the Railroad Law. Defendant argues as though it does. Instead the word " attach " appears. At the moment of consolidation the defendant did not " assume " the debts of The Lake Erie & Western. Instead these debts immediately became its own debts. It acquired a direct liability of its own. It did not at that moment guarantee any debt of The Lake Erie & Western, but rather became liable on its own debt which attached by reason of the statute. It did not assume an " obligation " of any other person, natural or artificial.

No instance has been cited to me of any application to the Interstate Commerce Commission by a consolidated corporation to assume the debts of the constituent corporations, and I think the reason may be found in the fact that the Interstate Commerce Commission has not yet assumed jurisdiction over the subject of consolidation under section 5 of the Interstate Commerce Act (U. S. Code, tit. 49, § 5), but has left these proceedings entirely to the jurisdiction of the States. (*Snyder* v. *New York, Chicago & St. Louis R. Co.*, 278 U. S. 578; *Operation of Lines and Issue of Capital Stock by the New York, Chicago & St. Louis Railroad Company*, 79 I. C. C. 581.)

Therefore, no approval was sought of the Commission for the consolidation and none was necessary.

The Commission did, however, issue a certificate of convenience and necessity and must have done so with knowledge of the incidents of the consolidation under State law, including the attaching of the liabilities of the constituent corporations to the consolidating corporation.

The complaint, it seems to me, falls into the same error in the use of the word "assume" in the fifth paragraph. However, as that is a conclusion of law, it may be disregarded as surplusage inasmuch as the other allegations of the paragraph (if we accept the word "merger" as meaning "consolidation") state the essential facts for a cause of action.

My conclusion is that it was not necessary for the defendant to make an application to the Interstate Commerce Commission or to receive its authorization under section 20a (U. S. Code, tit. 49, § 20a) before becoming liable on The Lake Erie & Western guaranty of the Northern Ohio bonds.

It follows that defendant's motion for summary judgment must be denied, and plaintiffs' motion will be granted.