RAILROAD COMMISSIONERS v. ATLANTIC COAST LINE RAILROAD CO.

1 .APPEAL—RAILROAD COMMISSIONERS.—THIS COURT will not review findings of fact by the Railroad Commission after notice and hearing, in absence of allegations charging fraud or other grounds for setting aside the adjudication.

2. INTERSTATE COMMERCE—RAILROADS.—THE RAILROAD COMMISSIONERS having determined that the accommodations furnished by an interstate railroad company to the citizens at a point in this State are inadequate, its order requiring the company to stop two of its interstate passenger trains at such point on flag, is not a burden on interstate commerce, but the writ issued to require the company to obey the order of the Commissioners gives the company the alternative right to provide facilities at such point substantially the same as would be afforded by stopping the trains in question.

3. REHEARING *refused.*

Petition to this Court in its original jurisdiction for writ of mandamus against the Atlantic Coast Line Railroad Co. requiring it to obey the order of the Railroad Commissioners.

*Messrs. Assistant Attorney General Leroy F. Youmans* and *M. C. Woods,* for petitioners.

*Messrs. Willcox & Willcox, Mullins & Hughes* and *Johnson & Buck,* contra.

The opinion herein was filed February 26, 1906, but on petition for rehearing the remittitur was held up.

### STATEMENT OF FACTS.

This is an application to the Supreme Court, in the exercise of its original jurisdiction, for a writ of mandamus, requiring the respondent to stop two of its fast mail trains when flagged, in order to provide adequate facilities to the citizens of Latta and surrounding country, in making certain railroad connections.

The petition alleges: "That on June 7th, 1904, certain citizens residing at Latta and along the line of the Latta

.Branch Railroad, filed a petition with the plaintiffs as Railroad Commissioners alleging that the Atlantic Coast Line Railroad Company was furnishing insufficient accommodations for passengers traveling on said railroad, and asking that the said railroad company be compelled to stop its passenger trains, Nos. 32 and 35, at its station in the town of Latta when flagged, for the purpose of receiving and delivering passengers at said station.

"That thereafter, on July 29th, 1904, the said Railroad Commissioners, after investigating the facts stated in said petition, and after notice and hearing the above named defendant in reference to the facts of said petition, found as a matter of fact, that sufficient accommodation was not furnished the citizens along the said Latta Branch Railroad, and in the town of Latta, by the Atlantic Coast Line Railroad Company at its station in Latta, and said Railroad Commissioners thereupon made an order that the said passenger trains, Nos. 32 and 35, operated by the said Atlantic Coast Line Railroad Company ,should stop when flagged, at the said Latta station, on and after August 1st, 1904."

The respondent contends that sufficient passenger accommodations are now furnished the citizens of Latta, and those residing along the Latta Branch Railroad, and relies upon the defense "that said order of the Railroad Commission of South Carolina is unreasonable, unnecessary, a direct burden upon intertsate commerce, and, therefore, a violation of and in conflict with section 8, of Article I., of the Constitution of the United States, which provides that Congress shall have power to regulate commerce with foreign nations and among the several States, and further, that said order is a direct and unnecessary interference with the speedy carriage of mails of the United States."

The testimony was taken by a special referee under order of the Court.

The decision of the Commissioners is set forth in the following notice served upon the general superintendent of the railroad company:

6—74

"Dear Sir: We beg to hand you herewith the finding and order of this Board in the matter set forth, as follows: On petition of the town authorities of the towns of Latta and Clio and citizens along the Latta Branch Railroad for the stopping of trains Nos. 32 and 35 on flag, for receiving and delivering passengers at said station. After personal inspection of the situation at Latta, and the demand of said citizens for those accommodations, it appears to this Board that sufficient accommodation was not furnished to those citizens to fulfill the requirements of the statutes of this State. The evidence was sufficient to warrant this Board in demanding that better accommodation should be furnished, and that it was not unreasonable to ask the said company to stop trains Nos. 32 and 35 on flag.

"Therefore, it is hereby ordered, that said trains shall stop on flag, at said Latta station, on and after August 1st."

The attorney who filed an argument in behalf of the petitioners, thus states the reasons why the accommodations are considered insufficient:

"Any inconvenience arising to passengers at Latta necessarily arises to passengers from Clio and the territory adjacent to the railroad between the two places, a distance of twenty miles, passengers from Clio and the stations between the two places having to pass through the junction point, Latta. Hence, there are involved not only passengers from Latta, but from a large territory, which, as it appears from uncontradicted testimony, is a progressive, prosperous and thickly settled section.

"A passenger at Latta may take a train at 8 A. M. and go to Dillon on the Latta Branch train. This train returns immediately and passing Latta, goes to Pee Dee junction, where connection may be had for Charleston and points on the Cheraw and Darlington road and Wilmnigton and immediate points. The Latta Branch train returns from Pee Dee forthwith, and, after a wait of two or three hours at Latta, goes to Clio. The morning express, a local train, arrives at 10.45 A. M. for points north. During the day

at some indefinite time local freight trains pass, one going north and the other south. In the afternoon the express, a local passenger, goes south, making connection with all points south of Latta, including Columbia. This is the only Columbia connection. The Latta Branch train returns from Clio and goes down to Pee Dee just behind the local passenger. It returns from Pee Dee and goes up to Clio, where it rests for the night. Thus there arrive and depart from Latta two passenger trains, the Latta Branch train five times and two freights, aggregating nine trains per week day. On Sunday there are only two trains.

"With all these trains, there is only one connection per day north to Dillon and points beyond. The stopping of train 32 would remedy this. There is only one connection to Columbia, and passengers for points beyond Columbia have to remain over night and pay a hotel bill, either in Florence, Sumter or Columbia. There is no connection for Orangeburg and points between Sumter and Augusta, absolutely none, without having to pay a hotel bill and being put to inconvenience and delay. The stopping of train 35 would correct all this."

The following testimony of the general superintendent of the respondent gives a clear outline of the grounds upon which it contends that the facilities are adequate:

"Q. In describing these connections which are afforded to Clio, S. C., are not all the connections you have described also afforded Latta, S. C.? A. Yes, sir. Q. Do you know the last census population of Latta, S. C.? A. Yes, sir; I have it taken from the United States Census, a copy of which I have. The population, according to the census of 1900, was 453. Q. What was the population of Clio? A 508. Q. What is the population of intermediate points between Clio and Latta? A. The only point shown is Dunbar, 115 people; the United States Census Report showing that the other points are less than 50 population, and are, therefore, not given. Q. What is the census population of Kingstree, S. C.? A. 760 people. Q. How many passenger trains a

day, in all directions, afford to the people of Latta, S. C., an opportunity of going off by boarding a train? A. 11. The following trains arrive at Latta: from Clio at 7 A. M., 6.05 A. M.; from all points south, 10.30 A. M.; from Dillon, 7.50 A. M.; from Pee Dee and points beyond, 9.35 A. M. and 9.05 P. M. The following trains depart from Latta: for Clio, 11.15 A. M. and 9.18 P. M.; 7.01 P. M. for Wilmington and points south and west; 8.30 A. M., Pee Dee and points beyond, and 7.40 P. M. for Pee Dee and points beyond. In addition to which there are two local freight trains provided with passenger service, leaving Latta at 9 A. M. for Fayetteville and intermediate points, and at 7.01 P. M. for Florence and intermediate points. Q. Is it not a fact, Mr. Craig, that the only one connection that is not made either in the morning or afternoon by the trains that you have described, is the train which leaves Florence at 8 A. M. for Columbia, S. C.? A. That train only runs to Sumter, but it affords connection at Sumter. Q. Is or not that the only train that the two trains that you have described do not make connection with? A. Yes, sir."

It also relies upon the fact that trains Nos. 32 and 35 already stop at Dillon, which is only six miles from Latta.

### OPINION.

April 9, 1906. The opinion of the Court was delivered by

MR. JUSTICE GARY, after the foregoing statement of facts.

On the former hearing before this Court, the respondent interposed a demurrer to the petition which was overruled. One of the grounds of demurrer was: "In that the order of the Railroad Commission is not the result of a judicially determined fact, and the defendant not having had its day in Court on the merits of said order, the enforcement of the order of Railroad Commission deprives the defendant of its property without due process, &c."

The Court, in disposing of this ground of demurrer, said:

"The facts were determined by a tribunal well recognized and adopted throughout the land. The defendant was notified, appeared and contested the facts upon the merits."

As the facts were judicially determined by a tribunal, empowered by statute to make such adjudication, they are not subject to review by this Court, in the absence of allegations charging fraud or other grounds for setting aside the adjudication.

Therefore, the question to be determined is, whether the order of the Commissioners, requiring the railroad company to stop at Latta (if flagged) its two fast mail trains engaged in carrying interstate passengers, is a burden upon interstate commerce, when the accommodations are otherwise inadequate. The mere fact that they are fast mail trains engaged in carrying interstate passengers, does not exempt them from regulations under the statutes of the State.

In the case of *Lake Shore Co.* v. *Ohio,* 173 U. S., 285, the Court had under consideration a statute of Ohio providing that "each company shall cause three, each way, of its regular trains carrying passengers, if so many are run daily, Sundays excepted, to stop at a station, city or village, containing over 3,000 inhabitants, for a time sufficient to receive and let off passengers." At the time when it was contended that the statute was violated, the railroad company caused only one of its trains to stop as required by the statute, although it was then operating three or more trains, both ways, over its road; all of which, except the one that stopped at the station, were fast mail trains transporting interstate passengers. On the assumption that the statute was not unreasonable, the Court held that the statute was constitutional, and used the following language, at page 300: "The power of the State, by appropriate legislation, to provide for the public convenience, stands upon the same ground precisely as its power by appropriate legislation to protect the public health, the public morals, or the public safety.'

Whether legislation of either kind is inconsistent with any power granted to the general government is determined by the same rules. * * * The statute does not stand in the way of the railroad company running as many trains as it may choose between Chicago and Buffalo, without stopping at intermediate points, or only at very large cities on the route, if, in the contingency named in the statute, the required number of trains stop at each place containing 3,000 inhabitants long enough to receive and let off passengers. It seems from the evidence that the average time required to stop a train and receive and let off passengers is only three minutes. Certainly the State of Ohio did not endow the plaintiff in error with the rights of a corporation for the purpose simply of subserving the convenience of passengers traveling through the State between points outside of its territory. * * * It was for the State to take into consideration all the circumstances affecting passenger travel within its limits, and, as far as practicable, make such regulations as were just to all who might pass over the road in question. It was entitled, of course, to provide for the convenience of persons desiring to travel from one point to another in the State on domestic trains. But it was not bound to ignore the convenience of those who desired to travel from places in the State to places beyond its limits, or the convenience of those outside of the State who wished to come into it. Its statute is in aid of interstate commerce of that character. It was not compelled to look only to the convenience of those who desired to pass through the State without stopping. Any other view of the relations between the State and the corporation created by it would mean that the directors of the corporation could manage its affairs solely with reference to the interests of the stockholders, and without taking into consideration the interests of the general public. It would mean, not only that such directors were exclusive judges of the manner in which the corporation should discharge the duties imposed upon it in the interest of the public, but that the corporation could so regulate the

running of its interstate trains as to build up cities and towns at the ends of its line or at favored points, and by that means destroy or retard the growth and prosperity of those at intervening points.    It would mean also that, beyond the power of the State to prevent it, the defendant railway company could run all its trains through the State without stopping at any city within its limits, however numerous its population, and could prevent the people along its road within the State who desired to go beyond its limits from using its interstate trains at all, or only at such points as the company chose to designate.    A principle that in its application admits of such results cannot be sanctioned."

The statute of Illinois is as follows: "Every railroad corporation shall cause its passenger trains to stop upon its (their) arrival at each station advertised by such corporation as a place of receiving and discharging passengers upon and from such trains, a sufficient length of time to receive and let off such passengers with safety: *Provided,* All regular passenger trains shall stop a sufficient length of time at the railroad stations of county seats, to receive and let off passengers with safety."    This statute was held to be unconstitutional in the case of *Cleveland &c.* v. *Illinois &c.,* 177 U. S., 514.    The Court used the following language: "The question broadly presented in this case is this: Whether a State statute is valid which requires every passenger train, regardless of the number of such trains passing each way daily, and of the character of the traffic carried by them, to stop at every county seat through which such trains may pass by day or night, and regardless also of the fact whether another train designated especially for local traffic may stop at the same station within a few minutes before or after the arrival of the train in question.    *     *     *    While, as we held in the Lake Shore case, railways are bound to provide primarily and adequately for the accommodation of those to whom they are directly tributary, and who not only have granted to them their franchise, but who may have contributed largely to the construction of the road, they are bound

to do no more than this, and may then provide special facilities for the accommodation of through traffic. * * * With no disposition whatever to vary or qualify the cases above cited, neither the conclusions of the Court nor the tenor of the opinions are opposed to the principles we hold to in this case, that, after all local conditions have been adequately met, railways have the legal right to adopt special provisions for through traffic and legislative interference therewith is unreasonable and the infringement upon that provision of the Constitution which we have held requires that commerce between the States shall be free and unobstructed." In commenting on the case of _Cleveland &c._ v. _Illinois &c.,_ 173 U. S., 285, the Court says: "This case is readily distinguishable from the one under consideration in the fact that the statute of Ohio required only that three regular passenger trains should stop at every station containing 3,000 inhabitants, leaving the company at liberty to run as many through passenger trains exceeding three per day as it chose, without restriction as to stoppage at particular stations. In other words, it left open the loophole which the statute of Illinois has effectually closed."

The Court recognized the principle that it is the duty of the railroad company to provide, _primarily,_ sufficient accommodations for those to whom it is directly tributary. From this doctrine, it follows as a necessary corollary, that it is only "after all local conditions have been adequately met, railways have the legal right to adopt special provisions for through traffic." The facts judicially determined by the Commissioners show that the accommodations are inadequate, and that the citizens of Latta are entitled to relief. In seeking to give relief the Commissioners have ordered trains Nos. 32 and 35 to stop when flagged.

This Court has reached the conclusion that the writ of mandamus should be issued; but in order that the respondent may have the opportunity of discharging its primary duty in the premises, without stopping trains Nos. 32 and 35 on flag, the writ will be so framed as to confer upon the

railroad company the alternative right to provide facilities substantially the same as those which would be afforded the citizens of Latta by stopping trains Nos. 32 and 35 on flag.

It is the judgment of this Court, that the writ of mandamus be issued in accordance with the conclusions herein announced.

April 9, 1906. PER CURIAM. After consideration of the petition for rehearing in this case, the Court is satisfied that no material principle of law or fact has been overlooked or disregarded.

It is, therefore, ordered, that the petition for rehearing be dismissed and the order heretofore granted staying the remittitur be revoked.

*This case is now in Supreme Court of United States on writ of error.*