15144

SOUTHERN RY. CO. v. PUBLIC SERVICE COMMISSION *ET AL.*
(SILVER STREET CASE)

(10 S. E. (2d), 769)

248

250

May, 1939.

Messrs. *John M. Daniel, Attorney General,* and *Irvine F. Belser,* for appellants, and *Thomas H. Pope, Jr.,* for intervening appellant,

*Messrs. Frank G. Tompkins* and *Sidney S. Alderman,* for respondent,

September 23, 1940.

The opinion of the Court was delivered by MR. L. D. LIDE, ACTING ASSOCIATE JUSTICE.

Southern Railway Company on June 30, 1938, applied to the Public Service Commission for permission to discontinue its agency at Silver Street, a station on one of its lines of railway in this State situate 7.6 miles of Newberry and 10.5 miles of Chappells. After a public hearing the commission filed its report or order refusing the proposed discontinuance, and thereafter, a petition for a rehearing having been denied, the instant case was commenced to vacate and set aside the order of the commission. After issue was joined the cause came on to be heard before Honorable G. Duncan Bellinger, Judge of the Fifth Circuit, upon the testimony taken before the commission, and in due time he handed down his decree requiring the commission to abate its order refusing authority to the Southern Railway Company to discontinue its agency at the station in question, this decree being dated Oc-

tober 30, 1939. And the cause comes before this Court upon an appeal from the decree of Judge Bellinger by the Public Service Commission.

There are seventeen exceptions, but in the argument of counsel for the appellants these exceptions are reduced to four propositions, briefly stated as follows:

"(1) Company under statutory and charter duty to maintain agents at stations.

"(2) Order of Commission cannot be set aside unless shown to be arbitrary and without rational basis.

"(3) Company bound to perform public duties and maintain agent as long as it retains charter privileges.

"(4) Commission's order not arbitrary but reasonable and within administrative discretion of Commission."

All of these propositions will be considered by us, but it is obvious that (1) and (3) relate to substantially the same point.

It is indeed true that the Southern Railway Company was and is under its charter and the statutes relating to railroad companies obligated to provide adequate facilities for the transportation of passengers and freight, and this of course would require the maintenance of a sufficient number of stations, at most of which agents should doubtless be employed. But it is quite clear that there are no charter or statutory obligations devolving upon a railroad company to maintain an agent at every one of its stations, for it has long been, if not always, recognized that railroads may maintain certain stations without agents, usually known as flag or nonagency or prepay stations. See 22 A. L. R., 878. Indeed, a careful examination of our statutes will disclose none relating to the maintenance of agents at stations, except perhaps by indirection. Yet it is obvious that the statutes do contemplate the proper operation of a railroad with reasonably adequate facilities, and this general obligation would of course include the maintenance of agents where they are reasonably necessary.

While as above stated there is no explicit statutory requirement relating to the maintenance of agents at stations, the matter is covered by a rule of the Public Service Commission adopted pursuant to the provisions of Section 8251, Code, 1932. This rule is referred to in the record herein as Rule 14, and will be found at pages 1472, 1473 of the Acts of 1937, the same having been filed as required by law on June 30, 1937.

Section 8251 expressly gives to the Public Service Commission general supervision of all railroads and railways in this State, and the rule just referred to provides that no depot, flag stop, station, office or agency heretofore or hereafter established shall be closed, removed, suspended, discontinued or abolished without authority granted by the commission. Provision is made in the rule for a public hearing upon any application for a discontinuance, and there is no question but that the practice provided in the rule was followed in the case at bar. But while the rule stipulates that no discontinuance should be allowed·without permission of the Public Service Commission it follows as a matter of law that the action of the commission in a case of this kind is subject to review by the Court in some form or by some method.

In Judge Bellinger's decree it is stated that the instant action was commenced under Section 8254, Code, 1932, to review the order involved herein handed down by the commission; and the action appears to have been so treated by both the parties thereto. Section 8254 does specifically provide that decisions of the Public Service Commission may be reviewed by the Court of Common Pleas upon questions of both law and fact, with the right of appeal, and it is further provided therein that an aggrieved party may, so as to obtain the benefit of such a review of an order of the commission, commence an action in the Court of Common Pleas for Richland County, within the time specified, to vacate such order or enjoin the enforcement thereof, on the

ground that the same was insufficient, unreasonable, unjust or unlawful. And it is further stipulated in this section that the transcript of the testimony taken before the commission shall constitute "the record of the commission on the review." It will thus be seen that this section provides an expeditious method for the judicial review of orders passed by the commission.

But this section constitutes a part of a statute enacted in the year 1922, Acts 1922, 32 St. at Large, page 938, and this statute is now incorporated in Sections 8252, 8253, 8254 and 8255 of the Code of 1932. And as will appear by reference to the majority opinion of this Court in the recent case of *Darby et al. v. Southern Ry. Co.,* 10 S. E. (2d), 465, filed July 17, 1940, the Act of 1922 in question does not cover railroads, but relates only to other public utilities, because the term "public utilities" as defined in this statute does not include railroads. The result therefore of this decision is that Section 8254 provides no method of review of an order of the Public Service Commission relating to railroads and so is not applicable to the case at bar. This point was not made in the Court below, nor is it made by any exception here. Hence it may be said to have been waived and that we may disregard it. However, it may at least be apposite to the question of the burden of proof and the effect which should be given by the Court to an order of the Public Service Commission relating to railroads.

It is doubtless true that any right to appeal from the orders of a public utility commission is founded upon constitutional or statutory provisions. And even where the statutes provide for an appeal it is said that the Court does not, strictly speaking, exercise appellate jurisdiction, since there can be no appeal in the legal sense from the order of an administrative body. 51 C. J., 70, 71. Hence the provision in Section 8254 for an action in the Court of Common Pleas for Richland County. But assuming that there is no statutory authority for any sort of review of an

order of the Public Service Commission relating to railroads, we are nevertheless of the opinion that the instant action may be maintained. It is quite clear that the commission is without power to enforce its own orders, but that application must be made to the Courts for the enforcement thereof, and this incidentally involves the judicial determination of the validity of such orders. Likewise we are of opinion that an aggrieved party would have the right to apply to the Court for relief against the threatened or attempted enforcement of an invalid order. In the case of *State ex rel. Daniel v. Broad River Power Company,* 157 S. C., 1, 153 S. E., 537, the Attorney General commenced a proceeding in the original jurisdiction for mandamus to require the Broad River Power Company to obey the Railroad Commission's order. And it was held that the commission had the right to intervene in the cause, that the testimony taken before the commission should be considered, and its order enforced by a writ of mandamus. While this case involved a street railway and therefore came within the terms of what is now Section 8254, that section was not the basis of the Court's jurisdiction, for no action was brought in the Court of Common Pleas, as therein provided. And in the suit of *Railroad Commissioners v. Atlantic Coast Line Railroad Co.,* 74 S. C., 80, 54 S. E., 224, relating to a railroad company, mandamus was likewise sought in the original jurisdiction of this Court. See also *Shealy (R. R. Commission) v. S. A. L. Ry. Co.,* 131 S. C., 144, 126 S. E., 622. Hence the instant case is properly before us, as we have indicated, regardless of statutory authority.

Judge Bellinger concluded in the light of the case of ██ *City of Columbia v. Tatum,* 174 S. C., 366, 177 S. E., 541, that it was his duty to exercise his own independent judgment on the questions of both fact and law, but notwithstanding this specification of his duty he stated that he accorded the order of the commission the respect due a decision of an important agency of the legislative department. And it clearly appears in his well-considered decree

that he did give due weight to the findings of the commission. But we are constrained to hold that the cases of *City of Columbia v. Tatum, supra,* and *City of Columbia v. Pearman,* 180 S. C., 296, 185 S. E., 747, are not applicable on this point to the case at bar, because they relate to Section 8254 and involve public utilities as defined in the Act of 1922, which did not include railroad companies. And it is our considered judgment that upon a judicial review of an order of the Public Service Commission relating to railroad companies, of the character now before us, the true rule is that the commission's findings of fact are *prima facie* correct and should not be set aside unless clearly against the weight of the evidence. *State ex rel. Daniel v. Broad River Power Co.,* 157 S. C., 1, 61, 153 S. E., 537, *supra.* We think, however, the rule is too narrowly stated in the case of *Railroad Commissioners v. Atlantic Coast Line Railroad Company,* 74 S. C., 80, 54 S. E., 224, *supra,* to the effect that this Court would not review findings of fact by the Railroad Commission (now entitled the Public Service Commission) in the absence of allegations charging fraud or other grounds for setting aside the adjudication; or rather, perhaps, that the statement of the Court in that case should not be construed as requiring a showing of fraud. It will be noted in this connection that this case was taken to the Supreme Court of the United States upon a writ of error and was reversed upon the ground that the commission erroneously attempted to require the Atlantic Coast Line Railroad Company to stop certain fast trains at Latta, in view of the surrounding facts and circumstances. *Atlantic Coast Line Railroad Co. v. Wharton,* 207 U. S., 328, 28 S. Ct., 121, 52 L. Ed., 230.

Another statement of the rule now under consideration will be found in 22 R. C. L., 784, to the effect that the orders of a railroad commission must be reasonable and if not they will be denied enforcement by the Courts. "However, they are presumptively reasonable, and will not be overturned unless it clearly appears that they are unjust and unreason-

able." And in 51 C. J., 1076, it is said: "Rules, regulations, or orders of a board or commission relative to operation and facilities are ordinarily presumed reasonable, or at least not *prima facie* unreasonable." And it is further stated that the burden rests upon the railroad company to show that the rule or order was unreasonable.

Our conclusion is that findings of fact by the commission in orders of this character should be deemed *prima facie* correct, and that such orders are presumptively just and reasonable. But it should be observed that in the case at bar there is really no dispute as to the facts, and that the controversy actually grows out of the conclusions to be drawn from the admitted facts; which brings us to a consideration of the findings of fact by the commission with reference to the station in question.

Silver Street is a small community, there being according to the findings of the commission only approximately 515 people within the relatively large area of a radius of one and one-half miles from the depot, and there are five merchandise stores within that distance, and only seven stores within two miles of the station.

It further appears from the order of the commission, based upon the testimony before it, that for the year 1937 and the first five months of the year 1938 (the order of the commission being dated December 30, 1938), the gross revenue received from freight originating at Silver Street, and freight delivered at Silver Street, amounted to $6,635.48, and passenger receipts amounted to $325.71, making a total of $6,961.19. But it was recognized that the freight receipts should be reduced by half, because the other stations to which the freight was going, or from which it came, were entitled to the allocation of the other half, so that applying this rule the gross receipts for the period at Silver Street amounted to $3,643.45, and it was found that the agency for this period was $2,143.46, *which "was 59% of the gross revenue."* So that deducting this expense there was left only $1,499.99 ap-

plicable to all other expenses incurred by the railroad company. It seems to us that this statement alone is quite sufficient to demonstrate a substantial loss to the railroad company in the operation of this station with an agent. And it will be observed as shown by the commission's order that these figures include the freight traffic handled at Old Town and Spearman, nonagency stations, but accounted for by the agent at Silver Street. And deducting this item, which seems to be properly deductible, there is, as pointed out by Judge Bellinger, a balance of $1,244.99 only, over and above the expense of the agency, applicable to the expense of operation, maintenance, etc., of the entire railway, which would increase the percentage of the agency expense to over 60%, or approximately two-thirds.

Judge Bellinger in his decree calculated upon a percentage basis that the actual loss incurred in the operation of the station at Silver Street for the period in question was $977-.21, but counsel for the commission strenuously maintain that his findings in this respect were erroneous, and that on the contrary if the proposed percentage method is used it might be shown that there was a profit instead of a loss, and reference is made to testimony in behalf of the railroad company at the hearing before the commission to the effect that there is no approved way to determine the amount of profit or loss at any particular station. But while it may be difficult to determine with precise accuracy the profit or loss at any particular station, giving due consideration to all factors, it is quite obvious as a matter of common sense that the expense of maintaining an agency at a station must be a very small part of the total operating expense, for the reason that it is merely incidental to the major task of transportation over long distances, involving the use of much labor and costly equipment. It is not surprising therefore to find as disclosed by the commission's order that the ratio of the total station expense to the gross revenue for the Southern Railway Company as a whole is 5.38% and for

the State of South Carolina 5.57%. Since then the station expense at Silver Street was more than ten times the average (and reasonable) amount of such expense there are no auditing formulas or accounting legerdemain which would transmute such a loss into a profit.

It has been recognized in a case of this character that the incidental loss at a particular station might not be of paramount importance if the entire operation of the railroad company was at that time profitable, or if the operation throughout the State was then profitable. *Chicago R. I. & P. R. Co. v. Railway Commission, Nebraska*, 85 Neb., 818, 124 N. W., 477, 26 L. R. A. (N. S.), 444, and annotation; *Atlantic Coast Line Railroad Co. v. N. C. Corporation Commission*, 206 U. S., 1, 27 S. Ct., 585, 51 L. Ed., 933, 11 Ann. Cas., 398, and 22 R. C. L., 831. But under the evidence before the commission, as shown by its order herein, Southern Railway Company, during the period of twelve months ending April 30, 1938, as a whole lost $3,998,753.00, and for the part which is assignable to South Carolina the loss is $1,890,205.00.

In the order of the commission it is stated that the question of profit and loss, while important, is not conclusive. But it is argued before this Court by the appellants that the same is immaterial because the company is under a statutory and charter duty to maintain agents at stations, and that it is bound to perform its public duties and maintain such agents as long as it retains its charter privileges. It is indubitably true that a railroad company is bound to perform its absolute public duties so long as it retains its franchises, even if a loss is thereby incurred. *State ex rel. Daniel v. Broad River Power Company*, 157 S. C., 1, 153 S. E., 537, *Supra*; *Washington ex rel. Oregon R. & N. Co. v. Fairchild*, 224 U. S., 510, 32 S. Ct., 535, 540, 56 L. Ed., 863, and many other cases. The opinion last cited was written by Mr. Justice Lamar, and the sound and just distinction between the primary or absolute duties of a railroad com-

pany and the secondary or relative duties is therein clearly drawn. The Court says "Where, however, the proceeding is brought to compel a carrier to furnish a facility not included within its absolute duties, the question of expense is of more controlling importance. In determining the reasonableness of such an order the Court must consider all the facts—the places and persons interested, the volume of business to be affected, the saving in time and expense to the shipper, as against the cost and loss to the carrier. On a consideration of such and similar facts the question of public necessity and the reasonableness of the order must be determined."

Furthermore, it is quite true, as was held in the case of *People ex rel. N. Y. & Queens Gas Co. v. McCall*, 245 U. S., 345, 38 S. Ct., 122, 124, 62 L. Ed., 337, corporations which devote their property to a public use "may not pick and choose, serving only the portions of the territory covered by their franchises which it is presently profitable for them to serve and restricting the development of the remaining portions by leaving their inhabitants in discomfort without the service which they alone can render". But this expression of the Court relates to an absolute duty to render the service in question and patently cannot be construed to mean that the identical service in all details must be rendered at every place. And as we have pointed out there is clearly no absolute duty requiring a railroad company to maintain an agent at every one of its stations, for the simple reason that nonagency stations may provide reasonably sufficient service, taking into consideration the amount of the public patronage and other surrounding conditions. In other words, the duty of maintaining an agent is at most incidental to the railroad company's primary and absolute duty of furnishing transportation services. Manifestly in a case of this kind the question of loss is of greater importance.

This was definitely held in the New Mexico case of *Seward v. Denver & R. G. R. Co.*, 17 N. M., 557, 131 P., 980, 46 L. R. A. (N. S.), 242, which is directly in point here because

it relates to the proposed discontinuance of an agency at a particular station. The State Corporation Commission refused permission to discontinue the agency but its order was overruled by the Supreme Court. There is a marked similarity in the facts of this case to those in the case at bar, and Judge Bellinger refers to this case and quotes from the opinion at length. The annotation thereto discloses that there have been relatively few decisions involving the direct question; but apparently the New Mexico case states the prevailing view, which impresses us as being just and reasonable.

In the Oklahoma case of *Kurn v. State,* 175 Okl., 379, 52 P. (2d), 841, in which the facts were also somewhat like those in the case at bar, it was held, as correctly stated in the syllabus: "In performance of absolute duty by railway company, question of expense is not to be considered, but, where duty sought to be enforced is one of additional convenience rather than necessity, question of expense to company and relative benefit to public is deciding factor, and may not be disregarded."

And in the case of *Atlantic Coast Line Railroad Co. v. Wharton,* 207 U. S., 328, 28 S. Ct., 121, 123, 52 L. Ed., 230, which has already been cited, and which, as above stated, reversed the judgment of this Court sustaining an order of the Railroad Commission requiring certain passenger trains to stop in Latta, the Court says: "The term 'adequate or reasonable facilities' is not in its nature capable of exact definition. It is a relative expression, and has to be considered as calling for such facilities as might be fairly demanded, regard being had, among other things, to the size of the place, the extent of the demand for transportation, the cost of furnishing the additional accommodations asked for, and to all other facts, which would have a bearing upon the question of convenience and cost. * * * That the inhabitants of a place demand greater facilities that they have is not at all conclusive as to the reasonableness of their demand for something more."

It is thus apparent that the Supreme Court of the United States recognizes that while a railroad company is required to provide adequate or reasonable facilities, this cannot be construed to mean that the same facilities shall be provided at every point regardless of public patronage or the incidental cost of such facilities.

One of the cases relied on before us by the appellants is the recent case of *Southern Ry. Co. v. S. C. Public Service Commission,* decided by a three-Judge Federal Court for the Eastern District of South Carolina, and reported in 31 F. Supp., 707, 716, the opinion being delivered by Judge Parker. But his opinion makes it quite clear that the question before the Court was not as to the adequacy of the passenger service on the portion of the line in question "[but whether it] should be permitted to abandon [all] passenger service [over it]".

We are in accord with the commission, however, in the view that while the matter of profit and loss is important it may not be conclusive in every case, because such a proposed change in the character of the service rendered must be considered in relation to the public convenience and necessity. And there might be circumstances in a particular case which would require the continuance of the agency although a loss was sustained. But it seems to us that in such a case the public convenience or necessity must be shown to be rather unusual in kind or degree. And when we consider the evidence introduced before the commission in the case at bar it seems clear to us that the conclusion reached by Judge Bellinger was correct.

It will be borne in mind that the discontinuance of an agency does not discontinue the service of the railroad company at that point. The same trains continue to run and both freight and passengers may be transported to and from the station in question. It is true that all freight has to be prepaid and there would be some inconvenience to shippers or consignees in forwarding or receiving freight, such as the

meeting of trains and transacting the business with conductors instead of the station agent. But it appears to be recognized that carload shipments may be handled without an agent with much less relative inconvenience than smaller shipments, although affording much greater freight revenue. And it should be observed from the order of the commission here that during the period of one year ending May 31, 1938, the number of carload shipments forwarded and received at Silver Street was 75, while the less-than-carload shipments forwarded and received was 179, making a total of 254 shipments, or a little more than two shipments of either kind for each three days. And as to the less-than-carload shipments alone there was an average of about one shipment for every two days. This bare statement is sufficient to show the limited use by the public of the facilities afforded by the railroad company for the shipment of freight to and from Silver Street.

At the hearing before the commission there was very little testimony against the discontinuance of the agency, although a petition for its retention, signed by a number of residents, was filed. The principal witness, who had made a few carload shipments of wood products from Silver Street, testified that he found it convenient to use the telegraph agency there for the purpose of ordering cars for that and other stations. And his testimony also shows that he had shipped from nonagency stations. It is apparent that the only material inconvenience which would be suffered by him is the necessity of going to some other station having a telegraph agency to arrange for the placing of cars. A careful examination of all the testimony in behalf of the patrons of the station leads to the conclusion that while doubtless some relatively minor inconvenience may result in some cases to the customers of the railroad company there will be no serious effect upon the business of these patrons, and that in the light of the evidence it would not be just or reasonable to require the railroad company to continue this agency under

the existing conditions, considering the loss thereby sustained.

So far from there being an absolute duty upon a railroad company to maintain an agency at all of its stations, it is not questioned, and the records doubtless show, that the Public Service Commission has heretofore permitted railroad companies to discontinue agencies at certain points. Manifestly each case is dependent upon its own facts and circumstances; and while the commission is entitled to the benefit of the presumptions in favor of its orders, as hereinbefore stated, we are of opinion that Judge Bellinger was right in setting aside the order in question, and that his decree is just and reasonable.

The Court must take judicial notice of the conditions existing in the last few years which have resulted in much curtailment of the business heretofore done by railroad companies. The depression is in part responsible, but aside from that, the remarkable development of motor-vehicle transportation, both private and public, has had a revolutionary effect upon the railroad common carriers of the country, with a corresponding disturbance of their financial structure. They are therefore necessarily passing through a period of transition and readjustment. In the very recent case of *Palmer v. Massachusetts,* 308 U. S., 79, 60 S. Ct., 34, 38, 84 L. Ed., 93, cited by counsel for appellants here, in which the opinion was delivered by Mr. Justice Frankfurter, he stated: "About a fourth of the railroad mileage of the country is now in bankruptcy." In the light of this rather startling statement it is manifest that railroad companies are not only justified in reducing their expenses, where it is practicable to do so with reasonable regard to efficiency and without impairment of their absolute obligations, but that it is their duty to do so in the public interest.

The judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE BONHAM and MESSRS. JUSTICES BAKER and FISHBURNE concur.

M̲r. J̲ustice S̲tukes concurs in result.