TERRELL, Justice.
Lake Butler and Raiford are stations on the Atlantic Coast Line Railroad in Union County, Florida. They are seven miles apart and are connected by a hard surfaced highway which parallels the railroad. The Atlantic Coast Line Railroad Company, hereinafter referred to as the “railroad,” filed petition with the Florida Railroad and Public Utilities Commission, hereinafter referred to as the “commission,” praying that it be given permission to consolidate its agencies at Lake Butler and Raiford. An examiner was appointed, testimony was taken, exceptions were filed and after hearing by the commission the application to consolidate the stations was denied. Petition for rehearing was seasonably filed and overruled. This appeal by certiorari is from the order of the commission overruling the petition for rehearing and denying the petition to consolidate.
The basic question presented is whether or not there is competent, substantial evidence in the record to support the finding and order of the commission denying the petition of the railroad to consolidate its agencies at Lake Butler and Raiford under the plan proposed. The said plan was for the Lake Butler agent to open that office at 8:00 A.M. and keep it open until 12:00 noon; lunch from 12:01 P.M. to 1:00 P.M., then travel to Raiford and open the station there from 1:30 P.M. to 3 :30 P.M., then return to Lake Butler and open that station from 4:00 P.M. to 5:00 P.M.
The answer to the point presented is evolved by determining whether the financial burden to the railroad in keeping both stations open eight hours daily five days in the week is such that it outweighs or is out of all proportion to the benefit to the public by doing so.
In reaching this determination it should be borne in mind that petitioner does not *202 seek to close either of the agencies in question, but it seeks to consolidate them under one agent by reducing the hours of service at each station. The railroad contends that there is not competent, substantial evidence to support the order of the commission and relies on Florida Motor Lines v. Railroad Commissioners, 100 Fla. 538, 129 So. 876, 885; Atlantic Coast Line R. R. Co. v. King, Fla.1951, 51 So.2d 723, and Atlantic Coast Line R. R. Co. v. King, Fla.1951, 52 So.2d 339, to support this contention.
In Atlantic Coast Line R. R. Co. v. King, Fla.1951, 51 So.2d 723, we recognized the well settled rule that we will not undertake to reweigh and reevaluate evidence presented to an administrative agent whose order is under examination but that in instances where the commission fails or omits to construe or interpret correctly the legal effect of the testimony, when considered in its entirety, on petition for certiorari, we will give to such testimony the reasonable interpretation that the commission should have given. The other two cases above cited support this doctrine.
To weigh and evaluate evidence means to determine the elements which give it probative value and if the evidence proffered is shown to be devoid of said elements or if the elements shown are without probative effect they should be rejected as mere delusions of proof that contribute nothing of probative value to> either side of the issue they were offered to establish. To illustrate, let us consider the evidence of the two witnesses who are patrons of the Raiford station. One of them was a merchant who testified that he used the station for express shipments only which came three to five times per month and then he would be inconvenienced in case of an emergency. Whether such emergency had ever occurred, what it was or what it amounted to was not shown. The other patron of the Raiford office testified that he first thought one agent could take care of the work at both stations, but after hearing the evidence, he did not believe one agent could take care of both. He gave no reason why. The witness testified that a new prison would soon be built at Raiford which would increase the freight business. It was pointed out, however, that all prison freight in car lots would be delivered at the prison but smaller amounts would be delivered at the station and would have to be picked up. The said witness was offered a key by which he could pick up the “smaller amounts” at the station any time he desired but declined such an arrangement. It will be noted that the Raiford station was open two hours each afternoon. That would appear to give ample time to get the “smaller amounts” of freight. When the evidence of these two witnesses is evaluated by the formula above, we cannot see that it had any substantial probative value.
Now let us see what the evidence for-petitioner shows. Three experienced railroad men testified that one agent could handle the business at both the Lake Butler and Raiford agencies in the manner proposed by the petition to consolidate. What is denominated in the brief of petitioner as “Time Breakdown of Total Work” and “Breakdown of Railroad Work,” amply support the testimony of these witnesses. Exhibits 5-20 offered in evidence by the railroad, having to do with the “financial facts” of the Lake Butler and Raiford stations, reveal a material loss to the railroad in the operation of the Raiford station.
Several witnesses testified on behalf of respondents, most of whom were patrons of the Lake Butler station. One of them testified that he worked late at night and did not get up until ten o’clock or later; consequently, the railroad’s proposal would inconvenience him despite the fact that the Lake Butler office which he patronized would be open four hours in the forenoon and one hour in the afternoon. On the whole, the evidence of respondents is vague and unconvincing. Some of the witnesses thought that there would be some inconvenience to inaugurate the plan proposed *203 but none of them said they could not adjust themselves to it, that it was unreasonable or that they would suffer any great hardship if the proposed schedule for keeping the stations open was instituted. It is shown that some slight inconvenience would be imposed on the public but in the light of the whole record we find mighty weak support for the commission’s finding that “unnecessary and unjustified hardship and inconvenience on the part of the public will result if the agencies are consolidated as proposed.” We could not more accurately state the situation in this case than was done in Southern Ry. Co. v. Public Service Comm., 195 S.C. 247, 10 S.E.2d 769, 776, wherein the court said:
“It is apparent that the only material inconvenience which would be suffered by him is the necessity of going to some other station having a telegraph agency to arrange for the placing of cars. A careful examination of all the testimony in behalf of the patrons of the station leads to the conclusion that while doubtless some relatively minor inconvenience may result in some cases to' the customers of the railroad company there will be no serious effect upon the business of these patrons, and that in the light of the evidence it would not be just or reasonable to require the railroad company to continue this agency under the existing conditions, considering the loss thereby sustained.”
We have given careful consideration to the finding of the commission that petitioner’s losses at Raiford are “theoretical and insignificant.” It is shown that this alleged “theoretical and insignificant loss” was $1,743.18 and that it was found as directed by the commission’s rule 3.548. We have studied the formula followed by this rule as well as the result of applying it. Counsel are widely at variance as to the elements essential to be considered in its application. Counsel are also widely at variance as to assumptions that should be considered in computing agency expenses. Counsel for petitioner reaches the conclusion that the railroad’s loss would have been much greater than the amount above stated, if his theory had been followed, while counsel for respondents comes up with a showing that the Raiford agency would show a profit if his theory had been followed. By the theories and figures employed by counsel, it is not possible to tell where the truth lies in this controversy or to what extent it is infected with truth or error but applying the formula for evaluating the testimony in the forepart of this opinion, we have no difficulty arriving at the Raiford station loss.
This is no criticism of counsel as to difference in result from theories of accounting. The best answer to it may be gleaned from an address delivered many years ago to the Georgia Bar Association by Chief Justice Logan E. Bleckley, whom Georgia Lawyers of his vintage generally agree to be the greatest judge who ever adorned the Georgia Supreme Court. The subject of Judge Bleckley’s address was “Truth at the Bar.” He prefaced it with this profound and pertinent observation:
“Law is the scripture of Justice, the gospel of Right, and Truth is the minister at its altars. Error is the pretender to holy orders, a wolf in sheep’s clothing, always striving to usurp the sacred office, or to share in the exercise' of its functions. To exclude Error from the sanctuary, and to admit and keep Truth within it, are objects of sedulous endeavor in every system of enlightened jurisprudence.”
See also “The Legal Architect,” page 197, by Wilmore Brown, of the Columbus, Ohio, Bar for exceptional estimate of Judge Bleckley’s opinions.
In every case like this the primary objective of the court is to ferret out the truth of the controversy or as Judge Bleck-ley expressed it, “to exclude Error from the sanctuary, and to admit and keep Truth within it.” Truth is not an elusive thing *204 like a rabbit in a briar patch. It cannot be manipulated like a handkerchief in the hands of a magician, but it is just as real as two times two make four and there are no exceptions to it. Applying the rule for evaluating the evidence stated herein reveals such a reality and points to the loss experienced.
While the South Carolina case above cited was one to abandon use of a station, the doctrine of that case and cases cited therein is so pertinent to the case at bar and the reasoning so sound, we feel impelled to apply it here. The record conclusively shows that the Raiford station is being operated at a loss and the evidence of the two witnesses who testified in support of continuing the Raiford agency at full time shows little or no reason why petitioner’s prayer should not be granted.
It is pertinent to point out that most of the carload shipments to Raiford are delivered direct to the prison farm where there is no need for an agent. It is true that the net loss shown in the operation of the Raiford station is not large when considered with the operation of petitioner’s railroad system, but we are convinced that this is a case in which the “cloak of presumptive validity has a tendency to wear thin” and interferes with petitioner’s “efforts to reduce expenses,” under circumstances where the convenience to the public would be slight. Butler v. Carter, Fla.1960, 123 So.2d 313. Even if the saving is no more than the $1,743.18 shown, it is an annual saving that will show dividends over the years.
In our view the decided weight of the evidence conclusively shows that granting petitioner’s request would cause no more than relatively minor inconvenience to the public and would have no serious effect upon the business of the patrons who testified. Even if the saving conclusively shown is no more than a modest one which is debatable, it is in line with that shown in other cases of the kind and is just and warranted in an institution that is presumed to continue to provide a public service and is running in the red.
The petition for certiorari is granted, the order of the commission is quashed with directions to grant petitioner’s request.
It is so ordered.
ROBERTS, C. J., and THOMAS, DREW and THORNAL, JJ., concur.